UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

VINCENT RYAN,                        :

                    Plaintiff,     :     12 Civ. 8075 (HBP)

   -against-                         :     OPINION AND
                               ORDER
MICHAEL ASTRUE,                      :

                Defendant.     :

-----------------------------------X


       PITMAN, United States Magistrate Judge:


I.  Introduction


       Plaintiff, Vincent Ryan, brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB").  Plaintiff and the Commissioner have both moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docket Items 20 & 22).  The parties have consented to my exercising plenary jurisdiction in this matter pursuant to 28 U.S.C. § 636(c).

       For the reasons set forth below, plaintiff's motion for judgment on the pleadings is granted and the case is remanded to

the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g)
for further proceedings consistent with this opinion.

II.   <u>Facts</u>

    A.   <u>Procedural Background</u>

       Plaintiff filed an application for DIB on June 3, 2009
(Tr.[1] 80-88).  He alleges that from October 20, 2008, he has
suffered from several conditions that have rendered him unable to
work.  Plaintiff states that these conditions are (1) tears in
the anterior cruciate ligament ("ACL") and the medial and lateral
collateral ligaments of his right knee, (2) effusion in the
joints,[2] (3) posterior disk herniation at the L5-S1 level,[3] (4) a
broad posterior disk bulge and (5) diffuse superficial tenderness
in the spine (Tr. 93).

       After the Commissioner denied plaintiff's claim on
August 3, 2009, plaintiff requested and was granted a hearing

---

    [1]"Tr." refers to the administrative record that the
Commissioner filed with its answer, pursuant to 42 U.S.C. §
405(g) (<u>See</u> Notice of Filing of Administrative Record, dated May
31, 2012, (Docket Item 13)).

    [2]Joint effusion is the escape of fluid into a joint.
<u>Dorland's Illustrated Medical Dictionary</u>, ("Dorland's") at 532
(27th ed. 1998).

    [3]Disk herniation is a "protrusion of the nucleus pulposus of
annulus fibrosus of the disk, which may impinge on the nerve
roots." <u>Dorland's</u> at 758.

before an Administrative Law Judge ("ALJ"); the hearing was held on March 9, 2011 (Tr. 31, 42, 53).  In a decision dated March 25, 2011, the reviewing ALJ, Michael Friedman, determined that plaintiff was not disabled (Tr. 15-28).  The ALJ's determination became the Commissioner's final decision on September 13, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-6).

Plaintiff commenced this action on November 6, 2012. Plaintiff and the Commissioner filed their cross-motions for judgment on the pleadings on October 30, 2013 and January 28, 2014 respectively (Docket Items 20 and 22).

B.   The Medical Record

Plaintiff was born on February 25, 1965 (Tr. 80).  He earned a general education degree in 1993 and attended a trade school from 1995 to 1996 (Tr. 100).  Plaintiff is unmarried but has a daughter (Tr. 103).  When he filed his application, plaintiff lived in an apartment with a friend, Kwana Valdes, and her three children (Tr. 102).

According to a disability report submitted by plaintiff in connection with his application for DIB and his testimony before the ALJ, he cannot stand or sit for more than 15 to 20 minutes and has difficulty turning his neck, bending, carrying

more than 5 pounds and walking up and down inclines (Tr. 34-36,
93).  Plaintiff also alleges that he suffers from constant pain
in his right knee (Tr. 93).  With respect to daily activities,
plaintiff alleges that he reads occasionally, but cannot cook,
clean, shop, or do laundry because of radiating pain in his neck
and back (Tr. 35, 106).  Additionally, he has difficulty dressing
himself, bathing and using the toilet (Tr. 36, 103-04).  Finally,
plaintiff alleges that he cannot walk more than one block and
requires a cane (Tr. 35).

    According to the disability report, plaintiff worked
for the eight years preceding his onset date as a youth division
aide at a juvenile detention facility.  Plaintiff wrote that his
job entailed interacting with juvenile offenders, including
guarding inmates, resolving conflicts and teaching sex education
courses (Tr. 94).  Plaintiff also wrote that prior to holding
that position, he worked for seven years as an inventory manager
at a department store (Tr. 94).

    The medical evidence in the record dates from February
2007, when plaintiff resumed physical therapy at Harlem Hospital
Center ("Harlem Hospital") for several injuries he had suffered
in an automobile accident (Tr. 152).  Plaintiff was examined by
an attending physician, Dr. Iluminado C. Nebab, who wrote that
plaintiff was experiencing pain in his neck and pain and dimin-

ished range of motion in his left shoulder (Tr. 152-53).  Dr. Nebab prescribed physical therapy, which plaintiff attended on a biweekly basis from early 2007 until May 2008 (Tr. 147-48, 151, 230, 232, 234, 245-46, 251, 253-54, 257, 259, 260, 274).  Notes from several of these visits reflect that plaintiff exhibited diminished range of motion, muscle weakness and pain in both his shoulder and neck (Tr. 147-49).  The notes also reflect that, during most sessions, plaintiff could tolerate his course of treatment, which included electrical stimulation, therapeutic exercises, stretching and the application of hot and cold packs (See, e.g., Tr. 230, 232, 234).

On May 14, 2007, plaintiff sought treatment at Harlem Hospital for injuries to his left shoulder and right knee as a result of an altercation with a detainee.  The notes from that visit indicate that plaintiff suffered from pain and "suprapatellar joint effusion" in his right knee and left shoulder, but no evidence of fractures or dislocations (Tr. 134-35).

In early 2007, plaintiff sought treatment from Dr. Dina Nelson, a physician, and Dr. Jeffrey Cohen, an orthopedic specialist, due to what plaintiff described as "erratic and insufficient" treatment at Harlem Hospital (Tr. 240).  Dr. Nelson examined plaintiff on February 7, 2008 (Tr. 240-41).  At that time, plaintiff complained of pain in his right knee when he

5

would walk or climb stairs and of occasional buckling and click-
ing (Tr. 240).  Plaintiff also reported radiating pain in his
neck and lower back (Tr. 240).  Dr. Nelson's examination of
plaintiff revealed moderate restriction in the lateral rotation
and lateral flexion in plaintiff's cervical spine as well as a
spasm in the right upper trapezius muscle (Tr. 241).  Dr. Nelson
also observed tenderness and a markedly decreased range of motion
in flexion and extension of the lumbar spine (Tr. 241).  With
respect to plaintiff's lower extremities, plaintiff displayed
stable balance and could walk without a cane, but that his right
knee was tender and tested positive in a McMurray test[4] (Tr.
241).  Dr. Nelson diagnosed plaintiff with right knee joint pain
but with possible "internal derangement," and a sprain or strain
in both the cervical and lumbar spine (Tr. 241).  She prescribed
biweekly physical therapy and referred plaintiff to an orthope-
dist (Tr. 241).

        Dr. Cohen conducted a physical examination of plaintiff
on February 15, 2008 and issued a report of his findings (Tr.
137-39).  He wrote that plaintiff exhibited "impaired ambulation
up from a seated position" and found that plaintiff's right knee

────────────────────

        [4]A positive test indicates injury to the meniscus.
Rodriguez v. Astrue, No. 12-CV-4103, 2013 WL 1282363 at *7 n.45
(E.D.N.Y. Mar. 28, 2013).

exhibited effusions in the joints and a positive McMurray test
(Tr. 239).  Dr. Cohen also found that plaintiff's right shoulder
had diminished flexion, abduction and strength (Tr. 239).  The
report did not indicate any diagnosis or propose any course of
treatment.  A CT scan of plaintiff's lumbar spine taken on March
21, 2008, revealed that there were L4-L5 and L5-S1 disk
herniations with degenerative changes (Tr. 129).  An MRI of
plaintiff's right knee revealed partial tears of the ACL and
medial and lateral collateral ligaments and associated joint
effusion and degenerative changes (Tr. 128).  Dr. Cohen's notes
from May 2, 2008 indicate that he prescribed plaintiff a patch to
alleviate the pain in his back and recommended that plaintiff
undergo arthroscopic knee surgery on his right knee; plaintiff
had the surgery on October 21, 2008 (Tr. 159, 276).  Plaintiff
testified that he returned to work thereafter, but re-injured his
knee when it buckled unexpectedly and has not worked since (Tr.
32).

Sometime after plaintiff's October 2008 arthroscopic
surgery, Dr. Nelson referred him to Dr. Brian Haftel for pain
management.  In a January 12, 2009 report, Dr. Haftel wrote that
plaintiff described the pain in his lower back as "sharp,"
"achy," "burning" and "constant" (Tr. 158).  Plaintiff also
reported pain in his neck that worsened with physical activity

7

(Tr. 158).  Plaintiff described his average daily pain as a 10 on the visual analog scale[5] ("VAS") (Tr. 159).  Dr. Haftel wrote that plaintiff walked with an antalgic gait and had difficulty rising from a seated position (Tr. 160).  He observed tenderness, spasms, diminished range of motion and pain on rotation in plaintiff's cervical spine (Tr. 160).  Dr. Haftel also observed tenderness, spasms, diminished range of motion and pain upon extension in plaintiff's lumbar spine (Tr. 160).  He diagnosed plaintiff with lumbar L4-L5 and L5-S1 disk herniations, cervical degenerative disk disease and lumbar radiculopathy[6] (Tr. 160).  After noting that plaintiff refused to take epidural steroid injections, he prescribed pain medication, Arthrotec and Soma, continued physical therapy and orthopedic treatment (Tr. 160).

Dr. Haftel conducted a follow-up examination on February 18, 2009 (Tr. 156-57).  He noted that plaintiff still described his average daily pain as a 10 on the VAS scale and that the medications prescribed afforded minimal relief for the pain

---

[5]"Visual analog scales (VAS) are often used in epidemiologic and clinical research to measure the intensity or frequency of various symptoms, particularly pain.  They are generally completed by patients . . ."  Agnes Paul Dauphin, et al., Bias and Precision in Visual Analog Scales:  A Randomized Controlled Trial, 150 Am. J. of Epidemiology 1117, 1117 (1999), available at http://aje.oxfordjournals.org/content/150/10/1117.full.pdf.

[6]Radiculopathy is a "disease of the nerve roots."  Dorland's at 1405.

in plaintiff's lower back and right knee (Tr. 156).  Dr. Haftel prescribed new medications, Tramadol and Voltaren gel, and recommended that plaintiff avoid strenuous activity and heavy lifting (Tr. 157).

Plaintiff returned for a consultation with Dr. Nelson on March 4, 2009 (Tr. 125-26).  Dr. Nelson indicated the ineffectiveness of plaintiff's medication regimen -- Arthrotec, Soma, Lidoderm patches, and Neurontin -- in relieving the radiating pain in his right knee, neck and right shoulder (Tr. 125).  She reconfirmed the range of motion limitations and diminished strength in plaintiff's cervical spine, lumbar spine and right knee as well as plaintiff's diagnoses (Tr. 125).  She recommended that plaintiff discontinue therapy for his lumbar spine, citing ineffectiveness, that plaintiff speak with Dr. Cohen regarding further treatment of his right knee and that plaintiff discuss trigger point injections with Dr. Haftel (Tr. 125-26).  Dr. Nelson expressed the opinion that plaintiff was "totally disabled as a youth division aide" (Tr. 126).

Later that month, Dr. Kenneth Palmer, an orthopedic surgeon, examined plaintiff in connection with plaintiff's worker's compensation claim arising out of the May 2007 accident[7]

---

[7]The first page of Dr. Palmer's 2009 report is omitted.

(Tr. 130-31).  Dr. Palmer found limited range of motion in plaintiff's shoulders and knees, but no tenderness, atrophy or muscle weakness (Tr. 130).  He diagnosed a cervical and lumbar sprain and right knee derangement and prescribed biweekly physical therapy (Tr. 130-31).  Dr. Palmer concluded that plaintiff suffered from a "temporary mild disability" due to his right knee injury, but could return to work if he could avoid bending and lifting more than 30 pounds (Tr. 131).

On May 15, 2009, Dr. Haftel reexamined plaintiff and completed another report (Tr. 155).  He wrote that the Tramadol and Voltaren gel were somewhat effective in alleviating plaintiff's pain and that plaintiff still refused epidural steroid injections (Tr. 155).  Plaintiff reported intermittent back pain and confirmed that his average daily pain level was still a 10 on the VAS scale (Tr. 155).  Dr. Haftel reconfirmed the diagnoses and course of treatment he gave in February 2009 (Tr. 155).

That same month, plaintiff was admitted to Harlem Hospital for an unrelated medical condition.  The examining physician noted that plaintiff's motor strength, reflexes and gait were all normal (Tr. 136).

On July 20, 2009, following plaintiff's application for DIB, the state Division of Disability Determinations sent him for an evaluation with a physician, Dr. Brian Hamway (Tr. 162-67).

Plaintiff told Dr. Hamway that he suffered from right-sided neck pain, right-side back pain and right knee pain, which had been aggravated by three injections in his right knee that were intended to provide pain relief (Tr. 162).  Dr. Hamway noted that plaintiff was prescribed the use of a cane, walked with a severely antalgic gait and that plaintiff, citing pain, declined to perform several exercises (Tr. 164).  After conducting a physical examination that revealed severe range of motion restrictions and diminished strength in plaintiff's cervical spine and right knee but observing plaintiff exhibit greater range of motion and strength in his spontaneous movements, Dr. Hamway concluded that plaintiff had exaggerated his symptoms during the examination (Tr. 164-65).  Dr. Hamway noted that an x-ray of plaintiff's spine was negative, but he did not view plaintiff's previous MRIs or CT scans (Tr. 166).  Dr. Hamway diagnosed right knee pain, neck pain and back pain that resulted in no physical limitations (Tr. 166).

In July 2009, S. Putcha[8] and M. Connelly, an orthopedic surgeon, reviewed plaintiff's record and assessed his functional capabilities (Tr. 170-75, 180-81).  With respect to plaintiff's exertional limitations, Putcha determined that plaintiff could occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand or walk for about 2 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday (Tr. 171). Putcha also determined that plaintiff suffered from exertional limitations only (Tr. 172-73).  Dr. Connelly concluded that plaintiff could perform sedentary work (Tr. 180).

The record also contains several medical notes dated after plaintiff's initial application for DIB was denied, but before the ALJ issued his decision.

On January 10, 2011, Dr. Haftel, plaintiff's physician for pain management, confirmed in a report that plaintiff was attending physical therapy and that plaintiff described his pain as a "9-10" on the VAS scale (Tr. 190).  After a physical exami-nation, Dr. Haftel noted that plaintiff has diminished range of

---

[8]The record does not indicate what credentials this individual possesses.  However, there is an orthopedic surgeon licensed in New York named Suryanarayan Putcha.  Search for a Physician, N.Y. St. Dep't of Health Physician Profile, available at http://www.nydoctorprofile.com/dispatch?action=display_search_par ameters (last visited Mar. 14, 2014).  I presume this is the same "S. Putcha" mentioned in the text.

motion in his cervical spine and paralumbar region and confirmed his earlier diagnosis of lumbar and cervical disk herniations and lumbar radiculopathy (Tr. 190-91).  He recommended that plaintiff continue taking his medication -- Tramadol, Soma, Celebrex (celecoxib), Nucynta (tapentadol), continue his physical therapy and avoid prolonged standing, sitting or strenuous activity (Tr. 191).

On February 4, 2011, a physician, Dr. Lulenesh Belayneh, completed a "follow-up evaluation" of plaintiff (Tr. 192-93).  Plaintiff reported to Dr. Belayneh that he suffered from radiating pain in his neck, low back and right knee, the severity of which was 9 out of 10 (Tr. 192).  Dr. Belayneh wrote that plaintiff used a cane and ambulated with an antalgic gait. Plaintiff's right knee tested positive in a McMurray test and exhibited diminished range of motion.  Plaintiff's cervical and lumbar spine exhibited diminished range of motion and decreased muscle strength (Tr. 192).  Dr. Belayneh diagnosed ACL degeneration and medial and collateral ligament tears, left knee meniscal degeneration, lumbar and cervical radicular pain associated with herniated discs at L5-S1 and C6-C7 (Tr. 192).  Dr. Belayneh determined that plaintiff suffered from a "permanent disability and impairment rating for [his] right knee" and "partial disabil-

ity" with respect to his impairments to the cervical and lumbar spine (Tr. 193).

At the request of plaintiff's attorney, Dr. Belayneh completed a "Multiple Impairments Questionnaire," in which she confirmed the results and diagnoses from her physical examination ten days earlier.  In addition, with respect to plaintiff's exertional limitations, Dr. Belayneh determined that he could only sit for 3 hours and stand/walk for 2 hours in an 8-hour workday, could not sit or stand for more than 15 to 30 minutes at a time and could only carry/lift up to 10 pounds occasionally (Tr. 185).  Dr. Belayneh assessed plaintiff as moderately limited in his ability to grasp and reach and minimally limited in his ability to manipulate objects (Tr. 186-87).  Finally, Dr. Belayneh concluded that plaintiff's impairments would likely cause him to miss work more than three times each month (Tr. 188).

On February 11, 2011, Dr. Cohen wrote that plaintiff's active range of motion in his right knee was "-3 to 100" out of a normal range of "0 to 140" and that plaintiff's symptoms affected his daily activities (Tr. 194).  He concluded that plaintiff's "disability [was] total" (Tr. 194).

III.  <u>Analysis</u>

    A.  Applicable Legal
       <u>Principles</u>

      1.  <u>Standard of Review</u>

     The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is based upon an erroneous legal standard.  42 U.S.C. § 405(g); <u>Burgess v. Astrue</u>, 537 F.3d 117, 127-28 (2d Cir. 2008); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000); <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999); <u>Bubnis v. Apfel</u>, 150 F.3d 177, 181 (2d Cir. 1998).

     The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.  <u>Tejada v. Apfel</u>, <u>supra</u>, 167 F.3d at 773-74; <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987); <u>Ellington v. Astrue</u>, 641 F. Supp. 2d 322, 327-28 (S.D.N.Y. 2009) (Marrero, D.J.).  "Even if the Commissioner's decision is sup-ported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  <u>Ellington v. Astrue</u>, <u>supra</u>, 641 F. Supp. 2d at 328; <u>accord</u> <u>Johnson v. Bowen</u>, <u>supra</u>, 817 F.2d at 986.  However, "where application of the correct legal principles

to the record could lead to only one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen, supra, 817 F.2d at 986.

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). "Consequently, where [there is] substantial evidence . . . this Court may not substitute its own judgment as to the facts, even if a different result could have been justifiably reached upon de novo review." Beres v. Chater, 93 Civ. 5279 (JG), 1996 WL 1088924 at *5 (E.D.N.Y. May 22, 1996); see also Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Thus, "'[t]o determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" Terwilliger v. Comm'r of Soc. Sec., No. 3:06-CV-0149 (FJS/GHL), 2009 WL 2611267 at *2 (N.D.N.Y. Aug. 24, 2009), citing Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

2.   Determination of
     Disability

A claimant is entitled to DIB benefits if he or she can establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both impairment and inability to work must last twelve months).[9]  The impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), and it must be

> of such severity that [the claimant] is not only unable to do his previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [the claimant] lives, or whether a specific job vacancy exists for [the claimant], or whether [the claimant] would be hired if [the claimant] applied for work.

42 U.S.C. § 423(d)(2)(A).

_____

[9]The standards that must be met to receive Supplemental Security Income benefits under Title XVI of the Act are the same as the standards that must be met in order to receive DIB under Title II of the Act.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, cases addressing the latter are equally applicable to cases involving the former.

The Commissioner must consider both objective and subjective factors when assessing a disability claim, including: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability to which the claimant and family or others testify; and (4) the claimant's educational background, age and work experience. Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); DiPalma v. Colvin, 951 F. Supp. 2d 555, 565 (S.D.N.Y. 2013) (Peck, M.J.).

"In evaluating disability claims, the [Commissioner] is required to use a five-step sequence, promulgated in 20 C.F.R. §§ 404.1520, 416.920." Bush v. Shalala, 94 F.3d 40, 44 (2d Cir. 1996).

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where . . . the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities . . . . Where the claimant does suffer a severe impairment, the third inquiry is whether, based solely on medical evidence, he has an impairment listed in Appendix 1 of the regulations or equal to an impairment listed there . . . . If a claimant has a listed impairment, the Commissioner considers him disabled. Where a claimant does not have a listed impairment, the fourth inquiry is whether, despite his severe impairment, the claimant has the residual functional capacity to perform his past work . . . . Finally, where the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

18

Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended in part on other grounds on rehearing, 416 F.3d 101 (2d Cir. 2005); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).

Step four requires that the ALJ make a determination as to the claimant's residual functional capacity.  See Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).  RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  To determine RFC, the ALJ makes a "function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch . . . ."  Sobolewski v. Apfel, 985 F. Supp. 300, 308-09 (E.D.N.Y. 1997).  The results of this assessment determine the claimant's ability to perform the exertional demands of sustained work, and may be categorized as sedentary,[10] light, medium, heavy, or very heavy.  20 C.F.R.

---

[10]Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday.  Social Security Ruling 96-9p, Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work ("Ruling 96-9p"), 1996 WL 374185 at *3 (1996); see 20 C.F.R. § 404.1567(a).  Sedentary work also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."
(continued...)

§ 404.1567; see Rodriguez v. Apfel, 96 Civ. 8330 (JGK), 1998 WL 150981 at *7 n.7 (S.D.N.Y. Mar. 31, 1998) (Koeltl, D.J.).

The claimant bears the initial burden of proving disability with respect to the first four steps. Burgess v. Astrue, supra, 537 F.3d at 128; Green-Younger v. Barnhart, supra, 335 F.3d at 106; Balsamo v. Chater, supra, 142 F.3d at 80. Once the claimant has satisfied this burden, the burden shifts to the Commissioner to prove the final step -- that the claimant's RFC allows the claimant to perform some work other than the claim- ant's past work. Butts v. Barnhart, supra, 388 F.3d at 383; Balsamo v. Chater, supra, 142 F.3d at 80.

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's RFC in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.

Gray v. Chater, 903 F. Supp. 293, 297-98 (N.D.N.Y. 1995) (Koeltl, D.J.). When a claimant retains the RFC to perform at least one of the categories of work listed on the Grid, and when the claimant's educational background and other characteristics are

---

[10](...continued)
20 C.F.R. § 404.1567(a).

also captured by the Grid, the ALJ may rely exclusively on the Grid in order to determine whether the claimant retains the RFC to perform some work other than his or her past work.  Butts v. Barnhart, supra, 388 F.3d at 383 ("In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the [Grid]).") (internal quotation marks and citation omitted).

However, "exclusive reliance on the [Grid] is inappropriate" where non-exertional limitations "significantly diminish [a claimant's] ability to work."  Butts v. Barnhart, supra, 388 F.3d at 383 (internal quotation omitted); Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986).  When a claimant suffers from a non-exertional limitation such that he is "unable to perform the full range of employment indicated by the [Grid]," Bapp v. Bowen, supra, 802 F.2d at 603, or the Grid fails "to describe the full extent of [the] claimant's physical limitations," Butts v. Barnhart, supra, 388 F.3d at 383, the Commissioner must introduce the testimony of a vocational expert in order to prove "that jobs exist in the economy which the claimant can obtain and perform." Butts v. Barnhart, supra, 388 F.3d at 383 (internal quotation marks and citation omitted); see 20 C.F.R. §§ 404.1569a(d), Pt. 404, Subpt. P, App. 2, § 200.00(e); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983) ("If an individual's capabilities

are not described accurately by a rule, the regulations make
clear that the individual's particular limitations must be
considered.").

3.  Treating Physician Rule

When considering the evidence in the record, the ALJ
must give deference to the opinions of a claimant's treating
physicians.  Under the regulations' "treating physician rule," a
treating physician's opinion will be given controlling weight if
it is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the
other substantial evidence in . . . [the] record."  20 C.F.R.
§ 404.1527(c)(2); Shaw v. Chater, supra, 221 F.3d at 134; Diaz v.
Shalala, 59 F.3d 307, 313 n.6 (2d Cir. 1995); Schisler v. Silliv-
an, 3 F.3d 563, 567 (2d Cir. 1993).

Before an ALJ can give a treating physician's opinion
less than controlling weight, the ALJ must apply various factors
to determine the amount of weight the opinion should be given.
These factors include:  (1) the length of the treatment relation-
ship and the frequency of examination, (2) the nature and extent
of the treatment relationship, (3) the medical support for the
treating physician's opinion, (4) the consistency of the opinion
with the record as a whole, (5) the physician's level of special-

ization in the area and (6) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6); Schisler v. Sullivan, supra, 3 F.3d at 567; Mitchell v. Astrue, 07 Civ. 285 (JSR), 2009 WL 3096717 at *16 (S.D.N.Y. Sept. 28, 2009) (Rakoff, D.J.) (adopting Report & Recommendation of Freeman, M.J.); Matovic v. Chater, 94 Civ. 2296 (LMM), 1996 WL 11791 at *4 (S.D.N.Y. Jan. 12. 1996) (McKenna, D.J.).  "[G]ood reasons" must be given for declining to afford a treating physician's opinion controlling weight.  20 C.F.R. § 404.1527(c)(2); Schisler v. Sullivan, supra, 3 F.3d at 568; Burris v. Chater, 94 Civ. 8049 (SHS), 1996 WL 148345 at *6 n.3 (S.D.N.Y. Apr. 2, 1996) (Stein, D.J.).

        B.    The ALJ's
              Decision

        The ALJ applied the five-step analysis described above and determined that plaintiff was not disabled (Tr. 20-28).

        At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 20, 2008 (Tr. 20).

        At step two, the ALJ found that plaintiff suffered from the following severe impairments:  (1) herniated discs in the cervical spine with radiculopathy, (2) herniated discs in the

lumbar spine with radiculopathy, (3) tears in the ACL and medial
and lateral collateral ligaments of the right knee and (4)
hypertension[11] (Tr. 20).

At step three, the ALJ concluded that plaintiff's
alleged impairments, either singly or in combination, were not
medically equal to the impairments listed in 20 C.F.R. Pt. 404,
Subpt. P, App. 1 (Tr. 20).  Specifically, he found that plaintiff
did not meet the listings for musculoskeletal disorders or
cardiovascular disorders (Tr. 20).

The ALJ then determined that plaintiff retained the
residual functional capacity to perform the full range of seden-
tary work (Tr. 21).  In determining plaintiff's RFC, the ALJ
considered plaintiff's medical records and reports, his consulta-
tive examinations and his statements.

After summarizing the evidence contained in the medical
record, the ALJ found that the record corroborated that plaintiff
suffered from ligament tears in his right knee and disk
herniations with radiculopathy in his cervical and lumbar spine
(Tr. 21).  However, the ALJ found plaintiff's "statements con-
cerning the intensity, persistence and limiting effects of these

---

[11]The ALJ's analysis of plaintiff's hypertension is
irrelevant to this appeal because plaintiff has never claimed
that his hypertension is disabling (Tr. 93).

symptoms were not credible to the extent that they were inconsistent wit the above residual functional capacity assessment" (Tr. 24).  Specifically, the ALJ discredited plaintiff's testimony regarding the degree of his limitations due to pain because it conflicted with findings from two examining physicians.  He also discredited plaintiff's testimony because plaintiff (1) declined epidural steroid injections and cervical fusion surgery and (2) had taken his hypertension medication inconsistently (Tr. 24).

The ALJ then assessed what weight to give the opinion evidence in the medical record.  He gave Dr. Palmer's opinion regarding plaintiff's residual functional capacity "significant weight" because it was supported by examination findings.  He gave some weight to Dr. Cohen's opinion regarding the degree of plaintiff's disability because Dr. Cohen operated on plaintiff's knee.  However, he declined to afford both Dr. Palmer's and Dr. Cohen's opinions controlling weight because they assessed plaintiff's degree of disability according to the standard set out by the New York Worker's Compensation statute (Tr. 25).  He gave Dr. Hamway's opinion that plaintiff had exaggerated his symptoms "significant weight" because the ALJ found that (1) the symptoms plaintiff exhibited during Dr. Hamway's examination were extreme and so inconsistent with plaintiff's other examinations in 2009 and (2) the limitations plaintiff claimed to Dr. Hamway were

25

inconsistent with plaintiff's spontaneous actions (Tr. 25).  The
ALJ next gave the opinions of Dr. Belayneh as to the degree of
plaintiff's disability "limited weight" because (1) his opinions
were provided on a form supplied by plaintiff's attorney, (2) Dr.
Belayneh was an examining source not a treating source and his
opinion was not supported by any treatment notes and (3) and Dr.
Belayneh's opinions regarding plaintiff's RFC addressed an issue
reserved for the Commissioner (Tr. 25).  Finally, the ALJ gave
some weight to the state agency disability analyst's opinion that
plaintiff had the residual functional capacity to perform seden-
tary work because he found it to be supported by the majority of
the evidence in the record.

     At step four, the ALJ concluded that plaintiff was
unable to perform the duties of his past work as a youth division
aide because it would require him to perform more than sedentary
work (Tr. 25).

     At step five, the ALJ found that jobs existed in
significant numbers in the national economy that plaintiff could
perform, given his RFC, age and education (Tr. 25-26).  He found
that plaintiff was a "younger individual" and that he had the
equivalent of a high school education (Tr. 26).  The ALJ next
found that it was immaterial whether plaintiff's job skills were
transferrable to other employment (Tr. 26, _citing_ Social Security

26

Ruling 82-41, <u>Titles II & XVI:  Work Skills & Their Transferabil-</u><u>ity as Intended by the Expanded Vocational Factors</u>, 1982 WL 31389; 20 C.F.R. Pt. 404, Subpt. P, App. 2).  Based on these vocational factors and plaintiff's RFC, the ALJ applied Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that plaintiff was not disabled (Tr. 26).

     C.  Analysis of the
        <u>ALJ's Decision</u>

     Plaintiff argues that the ALJ's decision should be overturned on four grounds:  (1) the ALJ's assessment that plaintiff did not meet the requirements of Listing 1.04 was erroneous and not supported by substantial evidence, (2) the ALJ violated the treating physician rule, (3) the ALJ erred in his evaluation of plaintiff's credibility and (4) the ALJ failed to request vocational expert testimony (<u>see</u> Plaintiff's Memorandum of Law in Support of Motion for Judgment on the Pleadings, dated Oct. 30, 2013, (Docket Item 23) ("Pl. Mem.") at 11-25).

     1.  <u>Listing Requirements</u>

     Plaintiff first argues that the ALJ erred when he concluded that plaintiff did not have an impairment or combina-tion of impairments that met or medically equaled one of the

listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 because
(1) the ALJ did not provide any reasoning for the conclusion at
step three of the analysis and (2) the medical evidence reflects
that plaintiff's back impairments meet, or at least equal, the
requirements of Listing 1.04A and (3) the ALJ did not seek the
assistance of a medical advisor (Pl. Mem. at 13-14; Plaintiff's
Brief in Reply to Defendant's Memorandum of Law, dated Feb. 20,
2014, (Docket Item 24) ("Pl. Reply") at 1-3).  The Commissioner
responds that (1) the ALJ's finding was supported by substantial
evidence and (2) the ALJ was not obligated to obtain additional
medical evidence regarding whether plaintiff's limitations were
equivalent to the limitations set forth in Listing 1.04A (Memo-
randum of Law in Opposition to Plaintiff's Motion for Judgment on
the Pleadings, dated Jan. 28, 2014, (Docket Item 21) ("Comm'r
Mem.") at 14-16).

Listing 1.04A, entitled "Disorders of the spine,"
provides, in relevant part:

Disorders of the spine (e.g., herniated nucleus
pulposus, spinal arachnoiditis, spinal stenosis,
osteoarthritis, degenerative disc disease, facet ar-
thritis, vertebral fracture), resulting in compromise
of a nerve root (including the cauda equina) or the
spinal cord.  With:

A.   Evidence of nerve root compression
characterized by neuro-anatomic distribution of
pain, limitation of motion of the spine, motor
loss (atrophy with associated muscle weakness or

> muscle weakness) accompanied by sensory or reflex
> loss and, if there is involvement of the lower
> back, positive straight-leg raising test (sitting
> and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  It is the plain-

tiff's burden to "demonstrate that [his] disability [meets] 'all

of the specified medical criteria' of a spinal disorder." Otts

v. Comm'r of Soc. Sec., 249 F. App'x 887, 888 (2d Cir. 2007),

quoting in part Sullivan v. Zebley, 493 U.S. 521, 531 (1990)

(emphasis in original) and citing Rosa v. Callahan, supra, 168

F.3d at 77.  "An impairment that manifests only some of those

criteria, no matter how severely, does not qualify."[12]   Sullivan

v. Zebley, supra, 493 U.S. at 530 (citation omitted).

     An ALJ's unexplained conclusion step 3 step three of

the analysis may be upheld where other portions of the decision

and other "clearly credible evidence" demonstrate that the

conclusion is supported by substantial evidence.  Berry v.

---

     [12]However, "[e]ven if a claimant's impairment does not meet
the specific criteria of a Medical Listing, it still may equal
the Listing." Valet v. Astrue, 10-CV-3282 (KAM), 2012 WL 194970
at *13 (E.D.N.Y. Jan. 23, 2012).  Specifically, "[t]he
Commissioner will find that a claimant's impairment is medically
equivalent to a Medical Listing if:  (1) the claimant has other
findings that are related to his or her impairment that are equal
in medical severity; (2) the claimant has a 'closely analogous'
impairment that is 'of equal medical significance to those of a
listed impairment;' or (3) the claimant has a combination of
impairments that are medically equivalent." Valet v. Astrue,
supra, 2012 WL 194970 at *13, citing § 404.1526(b)(1)-(3).

Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); see also Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112-13 (2d Cir. 2010); Otts v. Comm'r of Soc. Sec., supra, 249 F. App'x at 889.  But where the evidence on the issue of whether a claimant meets or equals the listing requirements is equipoise and "credibility determinations and inference drawing is required of the ALJ" to form his conclusion at step 3, the ALJ must explain his reasoning.  Berry v. Schweiker, supra, 675 F.2d at 469; see also Norman v. Astrue, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012) (Castel, D.J.).

The ALJ's decision contains boilerplate language that provides no meaningful explanation for his conclusion that plaintiff did not meet Listing 1.04A (See Tr. 20).  Although the ALJ did discuss the results of plaintiff's physical examinations, he does not explain how those results related to Listing 1.04A. Furthermore, the ALJ's analysis at other steps does not shed light on his conclusion at step three.  Therefore, I shall consider whether plaintiff has provided evidence that his impairments meet or equal the requirements of Listing 1.04A.  Of the six requirements in Listing 1.04A, the Commissioner only takes issue with plaintiff's claim that he suffered from (1) motor loss

and (2) sensory or reflex loss (Comm'r Mem. at 15; Pl. Reply at 2).[13]

Listing 1.04A requires "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. . ."  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  With respect to motor loss, the treatment records indicate that plaintiff did experience some muscle weakness during the relevant time period.  For example, in January 2009 Dr. Haftel noted that plaintiff "had difficulty rising from a seated position" and in March 2009 Dr. Nelson noted that plaintiff exhibited "weakness to resistence in quadriceps and hamstrings" and "decreased resistence in [plaintiff's] ankle dorsiflexion" (Tr. 125, 160).  In February 2011, Dr. Belayneh

---

[13]There is evidence that plaintiff meets the four other requirements of Listing 1.04A.  As noted by plaintiff, with respect to evidence of nerve root compression, the record reflects diagnoses from plaintiff's treating sources of (1) cervical and lumbar radiculopathy, which refers to a disease of the nerve roots, and (2) disk herniations at L5-S1 and L4-L5 levels impinging on the thecal sac, which can cause nerve damage and pain (See, e.g., Tr. 125, 129, 158-59, 192, 276).  With respect to evidence of neuro-anatomic distribution of pain, the record contains abundant references to plaintiff's complaints of pain and numbness during the relevant period (See, e.g., Tr. 125, 159, 192).  With respect to evidence of limitation in the motion of the spine, results from several examinations indicate that plaintiff experienced tenderness, muscle spasms and restricted range of motion in his right shoulder and his cervical and lumbar spine (See, e.g., Tr. 125, 130, 160, 192).  Finally, there is evidence to support that plaintiff's straight-leg raising tests were positive (See, e.g., Tr. 125, 160, 241).

found that plaintiff's muscle strength was 4/5 in his hip flexors with pain, 4/5 in his right quad, and -5/5 in his left quad with pain (Tr. 192). Such evidence is not overwhelming, but it is non-trivial evidence that plaintiff suffered from significant motor loss. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1) (noting that "significant motor loss" may be shown by an "[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position."). While the Commissioner is correct that there is no evidence of muscle atrophy and conflict-ing evidence regarding plaintiff's motor functions during testing (Comm'r Mem. at 15, citing Tr. 130, 136, 160, 165), it is the obligation of the ALJ to explicitly reconcile this conflicting evidence by evaluating whether plaintiff meets or medically equals the requirements of listing 1.04A.

With respect to establishing sensory or reflex loss, there is similarly conflicting evidence in the record. Dr. Haftel wrote in January 2009 that plaintiff's senses were "dimin-ished in the right lower extremity at the L5 distribution" and that plaintiff's reflexes were "diminished in both lower extremi-ties of +1 out of 2 over the patella and Achilles tendons" (Tr. 160). In 2011, Dr. Belayneh noted that plaintiff's "deep tendon reflex [wa]s unelicitable" (Tr. 192). Admittedly, there is evidence, cited by the Commissioner, from other examinations

where no sensory or reflex loss was found (Tr. 130, 136, 165, 240), but again, this is a conflict the ALJ is required to resolve in his decision.

Because there is evidence that plaintiff's impairments meet each of the requirements for listing 1.04A, the ALJ must provide an explanation of his reasoning as to why he believes the requirements are not met and explain the credibility determinations and inferences he drew in reaching that conclusion.  See Berry v. Schweiker, supra, 675 F.2d at 469; Norman v. Astrue, supra, 912 F. Supp. 2d at 81 (collecting cases); Rivera v. Astrue, No. 10 CV 4324 (RJD), 2012 WL 3614323 at *11-*12 (E.D.N.Y. Aug. 21, 2012).  Because the ALJ failed to address the potential applicability of listing 1.04A to what appears to be medical evidence that potentially meets the listing requirements, I cannot conclude that there is "sufficient uncontradicted evidence in the record to provide substantial evidence for the conclusion that [p]laintiff failed to meet step three."  See Sava v. Astrue, 06 Civ. 3386 (KMK)(GAY), 2010 WL 3219311 at *4 (S.D.N.Y. Aug. 10, 2010) (Karas, D.J.) (adopting Report & Recommendation of Yanthis, M.J.).  On remand, the ALJ should consider whether plaintiff meets the requirements of Listing 1.04A, and, if the ALJ adheres to his prior decision, he should explain his

33

reasoning for his ultimate determination with sufficient speci-
ficity to allow a reviewing court to evaluate that determination.

    2.  <u>Treating Physician Rule</u>

      Plaintiff next argues that the ALJ erred in evaluating
the opinions of Dr. Belayneh, one of plaintiff's purported
treating sources, because (1) the ALJ did not provide "good
reasons" for assigning Dr. Belayneh's opinions less than control-
ling weight and (2) the ALJ did not address the factors set forth
in 20 C.F.R. § 404.1527 in assessing what weight to give them
(Pl. Mem. at 14-18).  The Commissioner contends that (1) Dr.
Belayneh is not a treating physician, and (2) the ALJ gave valid
reasons for assigning Dr. Belayneh's opinions limited weight
(Comm'r Mem. at 15-18).

      A physician who has examined a claimant on one or two
occasions is generally not considered a treating physician.  <u>See</u>
20 C.F.R. § 404.1502 ("We may consider an acceptable medical
source who has treated or evaluated you only a few times or only
after long intervals (<u>e.g.</u>, twice a year) to be your treating
source if the nature and frequency of the treatment or evaluation
is typical for your condition(s)."); <u>see also</u> <u>Shatraw v. Astrue</u>,
No. 7:04-CV-0510 (NAM/RFT), 2008 WL 4517811 at *10 (N.D.N.Y.
Sept. 30, 2008) ("Doctors who see a patient only once do not have

34

a chance to develop an ongoing relationship with the patient, and
therefore are not generally considered treating physicians."),
citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) and
Schisler v. Bowen, 851 F.2d 43, 45 (2d Cir. 1988); accord Garcia
v. Barnhart, 01 Civ. 8300 (GEL), 2003 WL 68040 at *5 n.4
(S.D.N.Y. Jan. 7, 2003) (Lynch, D.J.).

     In plaintiff's case, the record does not demonstrate
that Dr. Belayneh saw plaintiff more than two times.  Dr.
Belayneh completed a Multiple Impairments Questionnaire on
February 14, 2011, writing that she first examined plaintiff on
July 9, 2010 and that she most recently examined plaintiff on
February 4, 2011, but failed to state how frequently she saw
plaintiff (Tr. 183).  The only treatment record demonstrating Dr.
Belayneh's relationship with plaintiff is the February 4, 2011
evaluation referenced in the Medical Impairments Questionnaire
(Tr. 192-93).  Absent "clear evidence" that Dr. Belayneh's
relationship with plaintiff went beyond her evaluations in July
2010 and February 2011, the record does not corroborate that Dr.
Belayneh was one of plaintiff's treating sources.  Snell v.
Apfel, supra, 177 F.3d at 133.

     Nevertheless, I conclude that the ALJ improperly
weighed Dr. Belayneh's opinion provided in the Medical Impair-
ments Questionnaire.  The ALJ's decision stated:

Limited weight is given to the opinions of Dr. Belayneh
. . . in the Multiple Impairment[s] Questionnaire of
February 14, 2011, in Exhibit 8F, p.p. 2-8.  The . . .
document was on a form from the claimant's representa-
tive and [is] therefore designed to support the claim-
ant's case for benefits.  Furthermore, there is no
evidence that Dr. Belayneh saw the claimant more than
once for Worker's Compensation purposes and is there-
fore likely an examining, but not a treating source.
There are no treatment notes from this physician to
support his opinions.  Finally, Dr. Belayneh gives a
residual functional capacity assessment indicating that
the claimant could not sit for even six of eight hours
in a workday thus precluding even sedentary work,
however, the determination of residual functional
capacity is a matter reserved to the Commissioner of
Social Security.

(Tr. 25).

The ALJ's decision is problematic for several reasons.
First, the ALJ should not have discredited Dr. Belayneh's opinion
simply because it was written on a form supplied by plaintiff's
attorney.  "'[T]he mere fact that a medical report is provided at
the request of counsel or, more broadly, the purpose for which an
opinion is provided, is not a legitimate basis for evaluating the
reliability of a report.'"  Gunter v. Comm'r of Soc. Sec., 361
Fed. App'x 197, 199 n.2 (2d Cir. 2010), quoting Reddick v.
Chater, 157 F.3d 715, 726 (9th Cir. 1998); see Balodis v.
Leavitt, 704 F. Supp. 2d 255, 265-66 (E.D.N.Y. 2010).  Absent
evidence that questionnaire was so suggestive that it substan-
tially altered Dr. Belayneh's answers, the ALJ's dismissal of the
opinion based on the form Dr. Belayneh used is no substitute for

36

a reasoned analysis of Dr. Belayneh's opinion on its merits (Tr. 192-93).

Second, the ALJ misrepresents Dr. Belayneh's treatment relationship with plaintiff.  While it was appropriate for the ALJ to identify Dr. Belayneh as an examining source based on evidence in the record, he is incorrect that Dr. Belayneh saw plaintiff only once and that there are no treatment notes supporting his opinion.  The record demonstrates that Dr. Belayneh saw plaintiff in July 2010 and February 2011 and that there are treatment notes from the latter examination which are consistent with the opinion Dr. Belayneh provided in the Medical Impairments Questionnaire (Tr. 183, 192-93).

Finally, the ALJ erred in discrediting Dr. Belayneh's opinion because it opined on an issue reserved for the Commissioner.  While it is true that no deference need be given to the conclusion that a claimant has a particular RFC, e.g., that a claimant is limited to performing sedentary work, Knight v. Astrue, No. 10 Civ. 5301 (BMC), 2011 WL 4073603 at *8 (E.D.N.Y. Sept. 13, 2011), that fact "does not exempt [the ALJ] from [his] obligation, under Schaal[ v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)] and § 404.1527(d)(2), to explain why a . . . physician's opinions are not being credited." Snell v. Apfel, supra, 177 F.3d at 134.  Simply stating that the final determination of

plaintiff's RFC is reserved for the Commissioner is not a reason for rejecting opinion evidence relevant to that determination. See, e.g., Iani v. Barnhart, 403 F. Supp. 2d 239, 256 (W.D.N.Y. 2005); accord Payne v. Apfel, 97 Civ. 4684 (RPP), 1999 WL 92509 at *5 (S.D.N.Y. Feb. 18, 1999) (Patterson, D.J.).

Accordingly, the case should also be remanded because the reasons cited by the ALJ for rejecting Dr. Belayneh's opinion were flawed.  On remand the ALJ should assess Dr. Belayneh's opinion -- as he should assess all opinions -- according to the factors set forth in 20 C.F.R. § 404.1527.  Baldwin v. Astrue, 07 Civ. 6958 (RJH)(MHD), 2009 WL 4931363 at *25 (S.D.N.Y. Dec. 21, 2009) (Holwell, D.J.) (adopting Report & Recommendation of Dolinger, M.J.); Ramirez v. Astrue, 08 Civ. 7609 (SAS), 2009 WL 2356259 at *5 (S.D.N.Y. July 29, 2009) (Scheindlin, D.J.).

    3.  Plaintiff's
        Credibility

Plaintiff next argues the ALJ erred in assessing plaintiff's credibility regarding the intensity, persistence and limiting effects of his pain because (1) the ALJ did not discuss all the factors set forth in 20 C.F.R. § 404.1529 and (2) he selectively cited to evidence tending to discredit plaintiff's credibility while ignoring contrary relevant evidence (Pl. Mem.

at 19-23).  The Commissioner responds that the ALJ was not
required to address the factors set forth by 20 C.F.R. § 404.1529
and that the ALJ properly weighed the medical evidence in assess-
ing plaintiff's credibility (Comm'r Mem. at 19-21).

>           Evidence of pain is an important element in the
>     adjudication of DIB and SSI claims, and must be thor-
>     oughly considered in calculating the RFC of a claimant.
>     See Lewis v. Apfel, 62 F. Supp. 2d 648, 657 (N.D.N.Y.
>     1999).  "[S]ymptoms, including pain, will be determined
>     to diminish [a claimant's] capacity for basic work
>     activities to the extent that . . . [they] can reason-
>     ably be accepted as consistent with the objective
>     medical evidence and other evidence."  20 C.F.R. §
>     404.1529(c)(4).  To that end, the Commissioner has
>     established a two-step inquiry to evaluate a claimant's
>     contentions of pain.  See Social Security Ruling 96-P,
>     1996 WL 374186 (S.S.A.); 20 C.F.R. § 404.1529(c).
>     First, the ALJ must determine whether the claimant
>     suffers from a "medically determinable impairment[ ]
>     that could reasonably be expected to produce" the pain
>     alleged.  20 C.F.R. § 404.1529(c)(1); see SSR 96-P.
>     Second, the ALJ must evaluate the intensity and persis-
>     tence of those symptoms considering all of the avail-
>     able evidence; and, to the extent that the claimant's
>     pain contentions are not substantiated by the objective
>     medical evidence, the ALJ must engage in a credibility
>     inquiry.  See 20 C.F.R. § 404.1529(c)(3)(i)-(vii);
>     Taylor v. Barnhart, 83 Fed.Appx. 347, 350-51 (2d Cir.
>     2003) (summary order).

Meadors v. Astrue, 370 F. App'x 179, 183-84 (2d Cir. 2010).

     It is "within the discretion of the [Commissioner] to
evaluate the credibility of plaintiff's complaints and render an
independent judgment in light of the medical findings and other
evidence regarding the true extent of such symptomatology."
Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995)

(Leisure, D.J.), accord Mimms v. Heckler, 750 F.2d 180, 186 (2d
Cir. 1984); Richardson v. Astrue, 09 Civ. 1841 (SAS), 2009 WL
4793994 at *6 n.97 (S.D.N.Y. Dec. 14, 2009) (Scheindlin, D.J.);
see Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d
588, 591 (2d Cir. 1984); Carroll v. Sec'y of Health & Human
Servs., 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of
the [Commissioner], not [the reviewing courts], to resolve
evidentiary conflicts and to appraise the credibility of wit-
nesses, including the claimant.").

     The ALJ relied on several observations in finding that
plaintiff's statements concerning his degree of pain were not
credible.  He credited Dr. Hamway's conclusion that plaintiff had
either exaggerated or feigned symptoms of pain during Dr.
Hamway's examination (Tr. 24).  Next, he inferred from plain-
tiff's refusal to undergo epidural steroid injections or cervical
fusion surgery that they were unnecessary and that plaintiff's
pain was tolerable (Tr. 24).  The ALJ then noted that an examin-
ing source in May 2009 found that plaintiff walked with a normal
gait and exhibited no abnormal neurological symptoms (Tr. 24).
Finally, the ALJ wrote that plaintiff took his hypertension
medication inconsistently (Tr. 24).  Based on these observations,
the ALJ concluded that "there is reason to doubt the claimant's

credibility as to the degree of his limitations due to pain" (Tr. 24).

In reaching this conclusion, the ALJ committed several errors. First, the ALJ discredited the degree of plaintiff's pain symptoms because plaintiff declined to have epidural steroid injections or to undergo a cervical fusion (Tr. 24). With respect to the cervical fusion, the ALJ's reasoning ignores that plaintiff's stated reason for declining surgery was to wait until he could afford it (Tr. 162-63). The ALJ similarly ignored evidence that plaintiff had received three injections before meeting Dr. Hamway and that they had actually worsened plaintiff's pain (Tr. 163). Additionally, the ALJ should have developed the record concerning the reasons why plaintiff declined these treatments before inferring that plaintiff declined them because he did not need them. Smith v. Colvin, No. 11-CV-4802 (NGG), 2013 WL 6504789 at *13 (E.D.N.Y. Dec. 11, 2013). Spinal surgery carries with it very serious risks, such as paraplegia, and an individual may forgo the surgery solely out of concern regarding those risks.

Second, the ALJ discredited the degree of plaintiff's pain because he found that plaintiff had not complied with his hypertension regimen (Tr. 24). This explanation ignores plaintiff's explanation that he did not purchase hypertension medica-

tion because he could not afford it (Tr. 163).  Additionally, it
is hard to fathom how plaintiff's failure to comply with his
treatment for hypertension -- an unrelated condition for which he
does not seek benefits -- bears on the credibility of his state-
ments regarding the severity of his pain.

Third, while the ALJ highlighted the discrepancy
between the findings from plaintiff's examining physicians in
2009 and plaintiff's claimed limitations on his ability to walk,
he did not cite or discuss many of the factors he is required to
consider pursuant to Section 404.1529(c)(3)(i)-(vii) in assessing
claimant's statements regarding his pain.  For instance, the ALJ
ignored plaintiff's statements that:  (1) he could not cook,
clean, walk short distances, (2) he needed help to dress himself
or bathe, (3) he suffered from constant radiating pain in his
neck, back and down both legs, (4) he took various pain medica-
tions over three years to alleviate his symptoms, (5) he saw a
pain management specialist and a physical therapist to treat his
pain and (6) he alternated between sitting and standing every 15
to 20 minutes in order to soothe his pain (Tr. 34-36).  Although
the ALJ was not required to address every factor set forth in 20
C.F.R. § 404.1529(c)(3) before making a credibility determina-
tion, see Martin v. Astrue, 337 F. App'x 87, 90 (2d Cir. 2009)

42

(upholding decision addressing three factors),[14] here the ALJ addressed one of the seven factors, and, as explained above, did so incorrectly.  This is inadequate under the regulations. Verdaguer v. Astrue, supra, 2013 WL 6426931 at *10-*11; Grace v. Astrue, 11 Civ. 9162 (ALC)(MHD), 2013 WL 4010271 at *22 (S.D.N.Y. July 31, 2013) (Carter, D.J.) (adopting Report & Recommendation of Dolinger, M.J.); Silberman v. Astrue, 08 Civ. 03398 (RMB)(THK), 2009 WL 2902576 at *13 (S.D.N.Y. Aug. 14, 2009) (Katz, M.J.) (Report & Recommendation), adopted at, 2009 WL 2778245 (S.D.N.Y. Sept. 1, 2009).

   In addition, the ALJ did not consider plaintiff's fifteen-year work history in assessing his credibility as re-quired by Section 404.1529(c).  20 C.F.R. § 404.1529(c)(3) ("We

---

[14]Notwithstanding the Circuit's decision in Martin, there appears to be some dispute within this Circuit as to whether an ALJ must address every factor in 20 C.F.R. § 404.1529(c) in assessing a claimant's credibility.  Compare Valet v. Astrue, supra, 2012 WL 194970 at *22, and Johnson v. Astrue, 748 F. Supp. 2d 160, 173-74 (N.D.N.Y. 2010), with Verdaguer v. Astrue, 12 Civ 6858 (VB), 2013 WL 6426931 at *10-*11 (S.D.N.Y. Dec. 9, 2013) (Briccetti, D.J.) (adopting Report & Recommendation of Davison, M.J.), and Robins v. Astrue, No. CV-10-3281 (FB), 2011 WL 2446371 at *4-*5 (E.D.N.Y. July 15, 2011), and Sarchese v. Barnhart, No. 01-CV-2172 (JG), 2002 WL 1732802 at *9 (E.D.N.Y. July 19, 2002) ("Although I do not believe a remand is necessary in every case where there are not explicit findings on all seven of the required factors, I believe that remand is required here, where a review of the transcript of the hearing and the ALJ's written opinion indicates that only one or two of the seven factors was given any consideration before drawing an adverse credibility determination against the claimant.").

will consider all of the evidence presented, including informa-
tion about your prior work record . . . ."). Because "[a]
claimant with a good work record is entitled to substantial
credibility when claiming an inability to work because of a
disability," Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.
1983), citing Singletary v. Sec'y of Health, Educ. & Welfare, 623
F.2d 217, 219 (2d Cir. 1980), the ALJ should have considered it.
See Romanelli v. Astrue, No. CV-11-4908 (DLI), 2013 WL 1232341 at
*11 (E.D.N.Y. Mar. 26, 2013); Johnson v. Astrue, supra, 748 F.
Supp. 2d at 173-74.

     The ALJ's above-referenced errors regarding the record
in conjunction with his failure to discuss evidence tending to
support plaintiff's statements as to the degree of his pain are
particularly troubling because an ALJ "'cannot simply selectively
choose evidence in the record that supports his conclusions' . .
. [or] mis-characterize a claimant's testimony." Meadors v.
Astrue, supra, 370 F. App'x at 185 n.2, quoting Gecevic v. Sec'y
of Health & Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y. 1995).

     Accordingly, I conclude that the ALJ's decision regard-
ing plaintiff's credibility is not supported by substantial
evidence and should also be remanded on that basis. On remand,
the ALJ should explicitly consider the factors set forth by 20

C.F.R. § 1527(c) and address what weight, if any, to give to plaintiff's work history.

      4.   The Need for a
          Vocational Expert

      Finally, plaintiff argues that the ALJ should have obtained a vocational expert to assess whether he could perform other work (Pl. Mem. at 23-24).  Specifically, plaintiff contends that a vocational expert was necessary to address (1) his inability to sit or stand for prolonged periods and (2) his associated pain (Pl. Mem. at 23-24).  The Commissioner responds that the ALJ properly relied on the Grid because there was no evidence that plaintiff suffered from non-exertional limitations (Comm'r Mem. at 21-22).

      As indicated above, "exclusive reliance on the [Grid] is inappropriate" where non-exertional limitations "significantly diminish [a claimant's] ability to work." Butts v. Barnhart, supra, 388 F.3d at 383, quoting Rosa v. Callahan, supra, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation omitted).  A claimant's ability to work is significantly diminished when the claimant is "unable to perform the full range of employment indicated by the [Grid]," Bapp v. Bowen, supra, 802 F.2d at 603, or if the Grid

fails "to describe the full extent of [the] claimant's physical limitations," Butts v. Barnhart, supra, 388 F.3d at 383.

The ALJ did not need to depart from the Grid because plaintiff's limitations were plainly exertional.  Agency regulations define exertional limitations as "limitations and restrictions imposed by . . . impairment(s) and related symptoms, such as pain, [that] affect only [the] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)."  20 C.F.R. § 404.1569a(b).  Because the ability to sit or stand for prolonged period is a strength demand of the job, plaintiff's impairments and associated pain[15] impose only exertional limitations.

---

[15]Plaintiff's contention that pain is itself a non-exertional limitation is incorrect.  Pain is neither an exertional nor a non-exertional limitation.  Rather, pain may impose exertional or non-exertional limitations, depending on whether it adversely affects a claimant's exertional or non-exertional abilities.  See 20 C.F.R. § 404.1569a(b)-(c); accord Rosa v. Callahan, supra, 168 F.3d at 78 n.2; Longbardi v. Astrue, 07 Civ. 5952 (LAP), 2009 WL 50140 at *23 n.61 (S.D.N.Y. Jan. 7, 2009) (Preska, D.J.).  Plaintiff does not argue here that his pain imposes any of the non-exertional limitations identified in 20 C.F.R. § 404.1569a(c), and, therefore, his contention that the ALJ failed to consider such limitations is erroneous.

Plaintiff argument that Ruling 96-9p[16] dictates otherwise is unpersuasive (Pl. Mem. at 24; Tr. 185, 191).  Plaintiff argues that the ALJ must call a vocational expert to determine whether plaintiff's inability to sit or stand beyond 30 minutes erodes the occupational base for sedentary work available to him.  However, Ruling 96-9p states that "[f]or individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource" to determine whether the occupational base for sedentary work has eroded.  Ruling 96-9p, 1996 WL 374185 at *6 (emphasis added).  The ALJ's decision to call a vocational expert is clearly discretionary.  Rodriguez v. Astrue, No. 08-CV-002S, 2009 WL 2957989 at *4-*5 (W.D.N.Y. Sept. 11, 2009); see also Overbaugh

---

[16]Ruling 96-9p states, in pertinent part:

> Standing and walking:  The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday.  If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded.  Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly.  For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

1996 WL 374185 at *6.

v. Astrue, No. 6:07-CV-0261 (NAM/DEP), 2010 WL 1171203 at *8-*9
(W.D.N.Y. Mar. 22, 2010).  Thus, the ALJ did not err in relying
exclusively on the Grids to determine that plaintiff could still
perform the full range of sedentary work.

IV.  Conclusion

          For all the foregoing reasons, plaintiff's motion for
judgment on the pleadings in granted (Docket Item 22) and the
Commissioner's cross-motion is denied (Docket Item 20).  The case
is remanded to the Commissioner pursuant to sentence four of 42
U.S.C. § 405(g) for further proceedings consistent with this
opinion.  The Clerk of the Court is directed to close the case.

Dated:  New York, New York
        March 18, 2014

                         SO ORDERED


                         _____
                         HENRY PITMAN
                         United States Magistrate Judge

Copies mailed to:

Sharmine Persaud, Esq.
Persaud & Morrin PLLC
1105 Route 110
Farmingdale, New York  11735-4818

John E. Gura, Jr., Esq.
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, New York  10007